UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICE ROBINSON,

              Petitioner,

   -vs-                                      **DECISION AND ORDER**
                                                No. 05-CV-6091(CJS)(VEB)

JAMES T. CONWAY,

              Respondent.

_____

**I.    Introduction**

Petitioner Patrice Robinson ("Robinson" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in New York State Supreme Court (Monroe County) on one count of murder in the second degree (N.Y. Penal Law § 125.25(1) (intentional murder); two counts of murder in the second degree (N.Y. Penal Law §125.25(3) (felony murder), and one count of attempted murder in the second degree. *See* Petition (Docket No. 1). Petitioner and three cohorts forced their way into the home of Tracey Tyson and held her, her children, and several adults, hostage, while they demanded to told the whereabouts of money supposedly owed to petitioner by person named Rob Gray, who was not at the apartment. During the incident, Tyson was killed, which led to the intentional murder charge. Petitioner also faced two counts of felony murder based upon Tyson's death–with the second underlying felony being the robbery of Eddy Stewart that occurred during the incident at Tyson's apartment. The victim of the attempted murder charge was Sean Gray, whose throat was slit but who survived the attack.

Petitioner was sentenced on October 21, 1993, to terms of 25 years to life on each of the murder counts, to be served concurrently with each other. He was sentenced to 8 1/3 to 25 years on the attempted murder count, to be served consecutively to the murder sentences. Robinson's motion pursuant to C.P.L. § 330.30 to set aside the verdict on the basis on juror misconduct was denied. The Appellate Division, Fourth Department, unanimously affirmed his conviction on direct appeal, and the New York Court of Appeals denied leave.

This habeas petition followed in which Robinson has asserted the following grounds for relief: (1) prosecutor's use of a peremptory challenge to strike one African-American venireperson constituted a violation of petitioner's rights under *Batson v. Kentucky*; (2) the trial court erred in refusing to charge attempted manslaughter in the first degree as a lesser included offense of intentional murder in the second degree; (3) cumulative trial errors deprived him of a fair trial; and (4) the trial court erroneously denied relief under C.P.L. § 330.30 on his claim of juror misconduct.

Respondent answered the petition, acknowledging that all of the claims raised therein appeared to have been properly exhausted. Respondent argued that the *Batson* claim was in part procedurally defaulted, but, in any event, without merit. Respondent argued that the remaining claims similarly were non-meritorious.

Robinson subsequently filed a letter with the Court asking, in sum and substance, to have his petition stayed and held in abeyance pending his exhaustion of state court remedies regarding a claim of ineffective assistance of appellate counsel. Specifically, Robinson alleges that "appellate counsel was ineffective in failing to raise the issue of trial counsel's ineffectiveness during [his] sentencing proceedings" in that trial counsel failed to argue that the trial court

"misapplied its discretionary sentencing powers under [New York] Penal Law 70.25(2) when it imposed consecutive, rather than concurrent, sentences on [his] conviction [sic] for intentional and attempted intentional murder." Robinson states that the effect of this error was his "further sentencing exposure of an additional 8 1/3 to 25 years to life, for an aggregate term of 33 1/3 years to life rather than 25 years to life."

I have construed Robinson's application as including a motion to amend the petition, as well as an application to invoke the stay-and-abeyance procedure. For the reasons set forth below, I conclude that it would be an abuse of discretion to permit post-answer amendment of the petition to add the ineffective assistance of appellate counsel claim, discussed in Robinson's letter-motion. Furthermore, I conclude that it would be an abuse of discretion to grant a stay under these circumstances, where Robinson has failed to demonstrate "good cause" for failing to exhaust the proposed claim prior to filing the original petition, or that the proposed claim is "potentially meritorious." *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

## II. Discussion

### A. Leave to Amend

Where, as here, a petitioner seeks to add new claims to his habeas petition once the statute of limitations under 28 U.S.C. § 2244(d)(1), has expired, the petitioner is required to show that the amendments "relate back" to the claims in the original petition. Fed. R. Civ. P. 15(a); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000). An amendment relates back if the claim that is sought to be added "arose out of the conduct, transaction, or occurrence set forth" in the original petition. FED. R. CIV. P. 15(c)(2). In making this determination, the court must find that the original petition "gave the defendant fair notice of the

newly alleged claims." *Id.* (citing *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998)). In *Mayle v. Felix*, 545 U.S. 644, 656 (2005), the Supreme Court rejected the proposition that a petitioner's "trial, conviction, or sentence" constitute the "conduct, transaction, or occurrence" contemplated by Rule 15. To hold otherwise, the Supreme Court found, would mean that all proposed amendments would "relate back" for purposes of Rule 15©. *Id.* at 657 ("[V]irtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto.") (citation omitted). Instead, the Supreme Court elected to limit the definition of "conduct, transaction, or occurrence" as follows: "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* A proposed amendment, however, will not "relate back" to the date of the original petition "when it asserts a new ground for relief supported by facts that *differ in both time and type* from those the original pleading set forth." *Id.* at 2566 (emphasis supplied).

Robinson's claim of ineffective assistance appellate counsel based on trial counsel's failure to object to the imposition of consecutive sentences states an entirely new ground for relief. The factual bases underlying the claim are of a different nature than those alleged in support of the claims in the original petition. Moreover, the proposed new claim occurred during the sentencing of Robinson's criminal proceeding, so it also differs in time from the claims alleged in the original petition, which allege errors during jury selection and the trial itself. Accordingly, under the Supreme Court's holding in *Mayle v. Felix*, *supra*, petitioner's proposed amended claim does not "relate back" to the original petition.

B.  **Appropriateness of Stay-and-Abeyance Procedure**

A further reason why Robinson's application must be denied is that he has failed to fulfill the requirements set forth in *Rhines v. Weber*, 544 U.S. at 277-78, for invocation of the stay-and-abeyance procedure. Because of the requirement that § 2254 habeas petitioners exhaust state judicial remedies, *see Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), and the procedural limitations imposed on habeas petitions by AEDPA,[1] dismissal of a petition containing exhausted and unexhausted claims "could jeopardize the timeliness of a collateral attack." *Zarvela v. Artuz*, 254 F.3d 374, 379-82 (2d Cir.2001). To ameliorate this situation, the Second Circuit adopted a "stay and abeyance" procedure for petitions presenting exhausted and unexhausted claims. *Zarvela*, 254 F.3d at 280. The Supreme Court endorsed this procedure in *Rhines v. Weber*, 544 U.S. 269 (2005), but held that it should be available only in limited circumstances: (1) a stay should not be granted where the unexhausted claim is "plainly meritless"; (2) "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court"; (3) a "mixed petition should not be stayed indefinitely," and "district courts should place reasonable time limits on a petitioner's trip to state court and back"; and (4) "if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Rhines*, 544 U.S. at 277-78.

Here, Robinson states that he "cannot admittedly focus the Court's attention to a justifiable cause for the ostensible delay of [his] current request . . . [o]ther than that of [his] ignorance and inadequacy with the law." The Court has not uncovered any cases standing for the

---

[1] Antiterrorism and Effective Death Penalty Act, Pub. Law No. 104-132, 110 Stat. 1214.

proposition that a petitioner's status as a layman or lack of legal knowledge and training constitute sufficient "good cause" under *Rhines*.

Moreover, and most important, Robinson has not demonstrated that his claim is "potentially meritorious." Even if trial counsel had objected to the imposition of consecutive sentences, the trial court clearly was well within its discretion in imposing them under N.Y. Penal Law § 70.25(2). Indeed, Robinson acknowledges that the sentencing judge has "discretionary sentencing powers pursuant to N.Y. Penal Law 70.25(2)." Thus, even if appellate counsel had raised an argument concerning trial counsel's failure to object to the consecutive sentences imposed, there is no reasonable probability, under the circumstances present here, that the outcome of Robinson's appeal would have been different.

At trial, the prosecution presented proof showing that Robinson was at the apartment of Tracey Tyson at in the City of Rochester with three cohorts, Xavier Moxley, Henry Edwards, and Thomas Robinson. The proof also showed that during that night Tracey was killed by having her throat cut and her acquaintance, Sean Gray, was severely injured by having his throat cut. Although the various witnesses had somewhat different memories of the exact sequence of events, the proof showed clearly that petitioner and his three cohorts were working together to recover money that petitioner believed to be owed to him by one Rob Gray.

Several witnesses testified about how the victims happened to be or come to the apartment and what happened to them. The twelve-year-old nephew of Tracey Tyson, Michael Brown (ten years old at the time of the crimes), testified that he was at his aunt's house that night and had fallen asleep watching television. He was awakened by a knock at the door which Tyson answered. Four men in black with four guns came in and put tape over Tyson's mouth. One of

the men told him to go to the bedroom. He recognized petitioner as one of the men because he had seen him previously at his aunt's house. The men told Tyson to call Gray and tell him that the baby was sick and needed to go to the hospital, but that the car would not start.

Sean Gray, Rob Gray's brother, received two phone calls from Tyson and was asked to come take the baby to the hospital. He arrived at Tyson's within 5 to 10 minutes, where he was greeted Moxley who held a gun to Sean's head. After he was forced into the apartment and ordered to lie down, a pillowcase was slipped over his head and the intruders repeatedly asked him where his brother Rob, was and where the money was in the house. When Sean denied knowing about the whereabouts of the money or his brother, his head was lifted up, a knife put to his throat, and he was threatened with having his throat slit. When Sean again denied knowing where the money was, his throat was cut and he felt his blood squirting out of his neck. Sean lay still, playing dead. Sean heard Tyson screaming and crying, begging the men not to hurt her children and offering to take them to the money. After that he heard people going out of the door, stepping over him. Tracey was crying; then the door was kicked open and someone yelled to Tracey to come. Sean heard her make a sound like "aiee", "like getting hit or something" and then heard the door close. Sean lay another minute and then pulled off the pillowcase and ran out the back door. He survived the stabbing.

Another eyewitness, Eddy Stewart, was also lured to the apartment. As soon as he walked into the house he saw someone with a shotgun and was ordered to get on the floor. One of the men demanded to know the whereabouts of Rob. There was proof that Stewart was robbed; he testified that a gun was pointed to the back of his head and petitioner rifled through his pockets and took $20 from him. He managed to escape during the fracas by jumping through a window;

however, he testified that he heard petitioner say that they had to kill everyone because otherwise he (petitioner) would be dead within two days. Stewart also testified that he could hear guns being cocked and Tyson pleading with the assailants not to hurt her. Before he jumped through a window to escape, he heard Tyson in the bedroom screaming. He testified that he heard the intruders bringing Tyson towards the back of the house; he then heard choking sounds.

During the attack, Tyson was choked and stabbed in several parts of her body, including her throat. Tyson died from the injuries inflicted by petitioner and his cohorts.

All of the sentences for the murder charges, which stemmed from the killing of Tyson, were set to run concurrently. The sentence with regard to the attempted murder of Gray, a different victim, was set to run consecutively to the murder sentences. New York's Penal Law clearly allows for this outcome. First, "when multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and the undischarged term or terms in such manner as the court directs at the time of sentence. . . ." N.Y. Penal Law § 70.25(1). However, Penal Law § 70.25(2) mandates that"[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences, except if one or more of such sentences is for a violation of section 270.20 of this chapter, *must run concurrently*." N.Y. PENAL LAW § 70.25(2) (emphasis supplied); *see also People v. Brown*, 80 N.Y.2d 361, 364 (N.Y. 1992) ("Where a defendant

commits "two or more offenses through *a single act*," trial courts must impose only concurrent sentences (Penal Law § 70.25(2)[.]") (emphasis in original). Notably, "trial courts retain consecutive sentence discretion when separate offenses are committed through separate acts, though they are part of a single transaction[.]" *Id.* (holding that the offenses of which defendant stands convicted spring from distinct acts, not a "single act", distinguishable by culpable mental state, nature and manner of use, time, place and victim, and thus "discretionary consecutive sentencing authority was available to the trial court").(citations omitted); *see also People v. Azaz*, 10 N.Y.3d 873, 875 (N.Y. 2008).

In *People v. Azaz*, defendant stabbed a woman while she was holding her infant son as she stood in a bathtub. The woman was stabbed fifteen times; the child was stabbed twice. Both died from their injuries. The New York Court of Appeals held that the trial court properly imposed consecutive sentences upon defendant for the two murders. Even assuming that the two blows that resulted in the infant's death were the product of acts committed against the mother after defendant placed the child in her arms, still defendant inflicted 15 additional blows to the mother, at least four of them penetrating her skull and brain. Though the stabbings in *Azaz* were part of a single transaction, they nevertheless were committed through separate acts, and thus the sentencing court retained the discretion to impose consecutive sentences.

In *People v. Brathwaite*, 63 N.Y.2d 839, 843 (N.Y. 1984), the defendant was sentenced to 25 years to life on each of his two felony murder convictions (with respect to the deaths of the store owner and the clerk), such sentences to run consecutively, and to a sentence of the same term on his depraved indifference murder conviction, the latter sentence to run concurrently with the other two sentences. The Appellate Division disagreed and required that Penal Law §

70.25(2) required that the two felony murder sentences run concurrently. The New York Court of Appeals disagreed, finding that "although the two deaths may be said to have occurred in the course of a single extended transaction–the robbery–it was separate "acts" which caused the deaths of the owner and the clerk (i.e., there is no contention that it was the firing of the same shot that killed both the owner and the clerk), and neither was a material element of the other." *Id.*

Here, the murder of Tyson and the attempted murder of Gray arguably occurred during the course of a single extended transaction. However, concurrent sentences are mandatory only when the offenses occurred through a "single act or omission," N.Y. Penal Law § 70.25(2), which is not the same as a "single transaction." *People v. Brathwaite*, 63 N.Y.2d at 843.. Under New York Penal Law § 15.00(1), a "single act" is a "bodily movement[.]" *Id.* Clearly, the stabbing and choking of Tyson and the stabbing of Gray were separate and distinct acts that occurred at different times during the home invasion. Under no reasonable view of the evidence could the murder of Tyson and the attempted murder of Gray be said to have occurred as a result of "one bodily movement," N.Y. Penal Law § 15.00(1), by petitioner. Thus, given the facts of Robinson's case, appellate counsel did not have a meritorious argument that there was an abuse of the trial court's discretionary authority to impose consecutive sentences.

## III. Conclusion

As discussed above, Robinson has failed to demonstrate that his unexhausted claim of ineffective assistance of appellate counsel is"potentially meritorious." Under the circumstances presented here, where has failed to show that his claim potentially has merit, the Court need not even consider the "good cause" factor. The Supreme Court has plainly stated that "even if a

petitioner had good cause for [the] failure [to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277. Accordingly, I conclude that it would not be a proper exercise of discretion to utilize the stay-and-abeyance procedure in Robinson case, and I deny the motion for a stay with prejudice.

**IT IS SO ORDERED**.

/s/ Victor. E. Bianchini
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: September 30, 2009
Rochester, New York.