UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

PATRICE ROBINSON,

              Petitioner,

    v.

JAMES T. CONWAY, Superintendent,
ATTICA Correctional Facility,

              Respondent.
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**DECISION AND ORDER**
**No. 05-CV-6091P**

## I. INTRODUCTION

Petitioner, Patrice Robinson ("Robinson") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") challenging his conviction in New York State Supreme Court, Monroe County (Doyle, J.), on one count of murder in the second degree (N.Y. Penal Law § 125.25(1) (intentional murder)); two counts of murder in the second degree (N.Y. Penal Law § 125.25(3) (felony murder)), and one count of attempted murder in the second degree (N.Y. Penal Law §§ 110.00, 125.25). See Petition ("Pet.") at 2 (Docket No. 1). Robinson was convicted by a jury and sentenced to terms of 25 years to life on each of the murder counts, to be served concurrently with each other. In addition, he was sentenced to 8 1/3 to 25 years on the attempted murder count, to be served consecutively to the murder sentences. He is presently incarcerated at the Attica Correctional Facility pursuant to this judgment of conviction. For the reasons set forth below, Robinson's § 2254 petition is denied.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Robinson, by Monroe County Indictment No. 739/91, was charged with three counts of murder in the second degree and one count of attempted murder in the second degree, arising out of the following incident. (T. 3)[1].  In the early morning hours of August 18, 1991, Robinson and three cohorts invaded the apartment of Tracey Tyson ("Tracey"), carrying two shotguns and two handguns. (T. 405).  The four men went to Tracey's home in an attempt to extract a payment for a drug debt of Rob Gray ("Rob"), Tracey's boyfriend. (T. 1560-68).  While holding Tracey, her two infant children, and her ten-year-old nephew hostage for several hours, they forced Tracey to call Rob to induce him to come to her house.  Instead of Rob coming to check on Tracey, Sean Gray, Rob's brother, and Eddy Stewart came to Tracey's apartment.  Both men were forced into the apartment at gunpoint and required to lie face-down on the floor with pillowcases over their heads. (T. 974-75, 978).  During this time, the hostages were told that if they did not tell Robinson and his cohorts where the money was located in the house, their throats would be slit.  T. 979. In addition, Tracey's 10-year-old nephew was continually threatened, including being told that he would be forced to drink bleach if he did not stop crying. (T. 709).  After repeatedly interrogating the hostages and taking $20 from Eddy Stewart, a scuffle broke out. (T. 1079-80).  During the scuffle,

---

[1]    "T." refers to the trial transcript.

Sean Gray's throat was slit and Tracey was stabbed in several areas of her body, including her throat. (T. 981). Eddy Stewart, fearing for his life, escaped by jumping out a window and proceeded to alert the police. (T. 1087-1090). When police arrived on the scene, they found Tracey's eight-month old baby with a bed sheet firmly tied around its neck. (T. 928). In addition, Sean Gray was transported for medical attention and survived the attack, but Tracey did not survive her injuries.

At trial, after eleven jurors were selected, defense counsel raised a Batson challenge to the prosecutor's use of a peremptory challenge to dismiss a young African-American male prospective juror, Juror Wyatt. Counsel for Robinson's co-defendant argued that the prosecutor's strike removed "50 percent of the available black jurors." (T. 275-76). In addition, Robinson's defense counsel argued that a pattern of discrimination could be made out from the improper removal of a single venireperson. (T. 276-77). Prior to the prosecutor explaining his reasons for the strike, he asked the trial court to make a finding of whether a pattern of purposeful discrimination existed. (T. 274). The trial court found that the prosecutor's strike did not constitute a pattern of purposeful discrimination and then allowed the prosecutor to place his reasons on the record. (T. 278). In response, the prosecutor noted his reasons for the strike, which included: (1) juror's assertion that he would want proof "beyond a shadow of a doubt;

(2) the juror's hostile attitudes towards the prosecutor; (3) the prosecutor's desire for a panel of jurors older than this juror who was being peremptorily challenged; and (4) the possibility that the juror may have sympathy for Robinson since he was the same age and also a college student home for the summer. (T. 278-81). Counsel for both defendants then argued that these reasons were not adequate, however the trial court accepted that the prosecutor's reasons were race-neutral and denied the <u>Batson</u> challenge.

Robinson was convicted, following a jury trial, of three counts of murder in the second degree and one count of attempted murder in the second degree. Robinson appealed his conviction to the Appellate Division, Fourth Department, raising the following issues: (1) the trial court erred in denying Robinson's <u>Batson</u> challenge; (2)the trial court erred in denying Robinson's request to charge attempted manslaughter in the first degree as the lesser included offense to attempted murder in the second degree; (3) the trial court's cumulative erroneous rulings deprived Robinson of his right to a fair trial; and (4) the trial court erred in denying Robinson's post-trial motion to vacate the conviction based on juror misconduct. The Appellate Division unanimously affirmed his conviction on November 21, 2003. <u>People v. Robinson</u>, 1 A.D.3d 985 (4th Dept. 2003). The New York Court of Appeals denied leave to appeal on May 28, 2004. <u>People v. Robinson</u>, 2 N.Y.3d 805 (N.Y.

2004). Robinson did not seek a writ of *certiorari* from the United States Supreme Court.

Robinson then made a motion to set aside the verdict, pursuant to C.P.L.[2] § 330.30, arguing that juror misconduct had taken place during deliberations. <u>See</u> Appendix, State Court Records, Exhibit C, 116-126. The claim of juror misconduct was based on the allegation that a juror provided information regarding the layout of the apartment in which the crimes took place, based on his knowledge of the premises when he worked there installing appliances. <u>Id.</u> During a hearing that was held on October 15, 1993, seven jurors testified and prior to the hearing, depositions were taken from all twelve jurors. By Decision, dated October 21, 1993, Monroe County Supreme Court (Doyle, J.) denied Robinson's motion on the basis that Judge Doyle found that the juror's prior knowledge of the apartment layout in no way prejudiced Robinson. <u>See</u> Appendix, State Court Records, Exhibit C, 95.

This federal habeas corpus petition followed on February 21, 2005, in which Robinson renews all of the claims that were raised on direct appeal.

### III. <u>DISCUSSION</u>

#### A.   Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

---

[2] New York Criminal Procedure Law

petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  28 U.S.C. § 2254(d)(1), (2); see also Williams v. Taylor, 529 U.S. 362, 375-76 (2000); Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir. 2003); Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

The federal habeas statute provides that courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  This means that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (citing 28 U.S.C. § 2254(a); see, e.g., Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Furthermore, the AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."
28 U.S.C. § 2254(e)(1); see also Boyette, 246 F.3d at 88 (quoting
§ 2254(e)(1)) (internal quotation marks omitted). The Second
Circuit has provided additional guidance concerning a federal
court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine
> whether a federal court may grant habeas relief:
> (1) Was the principle of Supreme Court case law
> relied upon in the habeas petition "clearly
> established" when the state court ruled? (2) If so,
> was the state court's decision "contrary to" that
> established Supreme Court precedent? (3) If not,
> did the state court's decision constitute an
> "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis
S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a
person in custody pursuant to a judgment of a State court shall not
be granted unless it appears that...the applicant has exhausted the
remedies available in the courts of the State..." 28 U.S.C.
§2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,
843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828
(2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995).
"The exhaustion requirement is not satisfied unless the federal
claim has been 'fairly presented' to the state courts." Daye v.
Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert.
denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariable be resolved first; only that is ordinarily should be[,]'" (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable

against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

## IV. PETITIONER'S CLAIMS

### A. The Trial Court Properly Denied Robinson's <u>Batson</u> Challenge

Robinson contends that the prosecutor exercised a peremptory strike against a black juror, Juror Wyatt, in a racially discriminatory manner, in violation of <u>Batson v. Kentucky</u> and the Equal Protection Clause. Specifically, Robinson argues that the trial court did not comply with the three-step procedure required when a <u>Batson</u> challenge is raised and that the prosecutor failed to provide a legitimate, non-discriminatory basis for his use of the peremptory strike.

### i. Procedural Bar

With regards to Robinson's assertion that the trial court failed to follow the proper three-step procedure in analyzing his <u>Batson</u> challenge, this claim is procedurally barred from federal habeas review. On direct appeal, the Appellate Division, Fourth Department explicitly rejected Robinson's challenge to the trial court's failure to follow the three-step analysis and, therefore, preserving the Batson challenge for review. <u>See</u> Robinson, 1 A.D.3d at 985-86. Here, the Appellate Division clearly utilized New York State's "contemporaneous objection rule" to hold that Robinson's failure to object to the trial's court noncompliance with the three-part analysis causes this claim to be unpreserved for

-9-

appellate review.  Accordingly, the court's decision on this issue rested on a state procedural rule.  See N.Y. Crim. Proc. Law §470.05(2).  Because the Appellate Division invoked a state procedural bar in rejecting Robinson's claim regarding the trial court's failure to use the three-part analysis, this Court may not review any federal question arising from the claim as the state court's decision "rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989)(citations and internal quotation marks omitted).  The Second Circuit has recognized New York State's contemporaneous objection rule to preserve for appellate review as an adequate and independent state procedural rule which may preclude federal habeas review. See Garcia v. Lewis, 188 F.3d 71 (2d Cir. 1999).  Thus, Robinson's claim is procedurally barred from being raised before this Court for habeas review.

Despite the procedural bar for Robinson's challenge to the trial court's failure to utilize a three-part analysis, this Court could reach the merits of the claim if Robinson were to demonstrate cause for the default and prejudice resulting therefrom, or that failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750.  A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). However, Robinson fails to

making any showing that would meet the stringent requirements necessary to demonstrate that a miscarriage of justice would result were this Court not to address the merits of this claim. The "cause" standard requires that Robinson "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." See Murray v. Carrier, 477 U.S. 478, 488 (1986). Robinson offers no argument or evidence to demonstrate sufficient "cause" to excuse the procedural bar. Moreover, a petitioner's ability to establish "cause" is a threshold issue and when the federal habeas court does not find cause, the court does not need to evaluate whether prejudice existed. See Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982) (noting that in its previous decisions, it had "stated these criteria in the conjunctive," and therefore "cause" and "prejudice" test is framed in the conjunctive) (citing Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977)); see also United States v. Frady, 456 U.S. 152, 167 (1982) (declining to consider "cause" when it clearly found no "prejudice"). Accordingly, this Court is precluded from considering Robinson's claim that the trial court procedurally erred in analyzing his Batson challenge.

## ii. On the Merits

Robinson also asserts that the prosecutor's basis for his peremptory strike was inadequate and pretextual. Pet. At 7 (Docket No. 1). Robinson properly raised this issue on direct appeal and

the Appellate Division, Fourth Department, rejected his challenge
by stating:

> At the outset, we note that the issue whether defendant
> established a prima facie case of discrimination under
> the first step of the analysis is moot because the court
> continued with the three-step analysis and ruled on the
> ultimate issues of purposeful discrimination and pretext
> (see People v. Smocum, 99 N.Y.2d 418, 422-423, 757
> N.Y.S.2d 239, 786 N.E.2d 1275; People v. James, 99 N.Y.2d
> 264, 270, 755 N.Y.S.2d 43, 784 N.E.2d 1152; People v.
> Payne, 88 N.Y.2d 172, 181-182, 643 N.Y.S.2d 949, 666
> N.E.2d 542). The prosecutor met his burden of production
> in this case under step two of the analysis by setting
> forth facially race-neutral reasons for exercising a
> peremptory challenge with respect to a black juror (see
> Smocum, 99 N.Y.2d at 423, 757 N.Y.S.2d 239, 786 N.E.2d
> 1275). The court accepted the prosecutor's race-neutral
> reasons and denied the challenge, thereby implicitly
> determining that those reasons were not pretextual (see
> Parker, 304 A.D.2d at 156-157, 755 N.Y.S.2d 521). That
> determination is entitled to great deference and is
> supported by the record (see People v. Barney, 295 A.D.2d
> 1001, 1001-1002, 743 N.Y.S.2d 793, lv. denied 98 N.Y.2d
> 766, 752 N.Y.S.2d 6, 781 N.E.2d 918; People v. Jones, 289
> A.D.2d 962, 738 N.Y.S.2d 260, lv. denied 98 N.Y.2d 652,
> 745 N.Y.S.2d 511, 772 N.E.2d 614; People v. Carelock, 278
> A.D.2d 851, 719 N.Y.S.2d 412, lv. denied 96 N.Y.2d 757,
> 725 N.Y.S.2d 283, 748 N.E.2d 1079).

Robinson, 1 A.D.3d at 986. Since the Appellate Division rejected

Robinson's Batson challenge on its merits, the AEDPA's

"unreasonable application" or "contrary to" standard applies. See

Wells v. Rick, 2008 WL506294 at n. 22 (S.D.N.Y. 2008)(citations

omitted). Furthermore, the Second Circuit has held that "[t]he

clearly established Supreme Court precedent applicable in this case

is Batson v. Kentucky ...." Overton v. Newton, 295 F.3d 270, 276

(2d Cir. 2002).

"[T]he Equal Protection Clause [of the Constitution] forbids the prosecutor to challenge potential jurors solely on the account of their race." Batson v. Kentucky, 476 U.S. at 89. To assist trial courts in evaluating whether a party exercised a peremptory challenge in a discriminatory manner, the Supreme Court in Batson fashioned a three-part burden-shifting test. Id. at 96-98. First, the opponent of a peremptory challenge must make a prima facie case of racial discrimination. If the trial court finds a prima facie case has been established, the burden shifts to the proponent of the peremptory strike to come forward with a race neutral explanation. Purkett v. Elem, 514 U.S. 765, 767 (1995). The non-moving party's burden at step two is "very low." McKinney v. Artuz, 326 F.3d 87, 98 (2d Cir.2003) (citing Purkett, 514 U.S. at 768); accord Green v. Travis, 414 F.3d 288, 295 n. 2 (2d Cir.2005). In fact, the race neutral reason need not be " 'persuasive or even plausible [.]' " Rice v. Collins, 546 U.S. 333, 338 (2006) (quoting Purkett, 514 U.S. at 767-8). The Supreme Court consistently has held that "so long as the reason is not inherently discriminatory, it suffices." Id. At step three, the trial court then must look at the proffered race neutral explanation and decide whether opponent of the strike has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 98; see also Purkett, 514 U.S. at 768. It is not until this step that the persuasiveness of the justification becomes relevant. Purkett, 514 U.S. at 768 (citing

<u>Batson</u>, 476 U.S. at 98; <u>Hernandez v. New York</u>, 500 U .S. 352, 359 (1991) (plurality opinion).

During the voir dire at Robinson's trial, there were three African-American venirepersons on the panel. One African-American woman was excused by the parties because she knew two key witnesses. Of the two other African-American venipersons on the panel, one was selected as a member of the jury and the other, Juror Wyatt, was subject to a <u>Batson</u> challenge. Robinson's defense counsel argues that the exclusion of Juror Wyatt was improper because it was based on Juror Wyatt being "a young black man, a student at Howard University, and has some job at Bausch and Lomb." (T. 273). In addition, defense counsel argues that the improper removal of a single person could constitute a pattern of purposeful discrimination. (T. 276-77). The trial court held, " I do not find any pattern of discrimination at this point," but allowed the prosecutor to put his reasons for the peremptory strike on the record. (T. 277-78). The prosecutor articulated several reasons for his decision to use a peremptory strike including: (1) juror's assertion that he would want proof "beyond a shadow of a doubt; (2) the juror's hostile attitudes towards the prosecutor; (3) the prosecutor's desire for a panel of jurors older than this juror who was being peremptorily challenged; and (4) the possibility that the juror may have sympathy for Robinson since he was the same age and also a college student home for the summer. (T. 278-81). The trial

court then accepted the prosecutor's race-neutral reasons and denied the <u>Batson</u> challenge. (T. 286).

On federal habeas review, the trial court's acceptance of a prosecutor's race-neutral explanation will be disturbed only if it " 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Messiah v. Duncan</u> 435 F.3d 186, 198 (quoting 28 U.S.C. § 2254(d)(2)). Robinson has presented no evidence that would provide a "clear and convincing" showing that the trial court's acceptance of the prosecutor's neutral proffered reasons was unreasonable. <u>See</u> 28 U.S.C. § 2254(e)(1). Furthermore, there is no evidence in the record that the Appellate Division's affirmance of the trial court's determination was an "unreasonable application of," or "contrary to" the standard present in <u>Batson</u>. In sum, this claim must be denied for Robinson's failure to present clear and convincing evidence that the trial court made an unreasonable determination of fact when it found that the prosecutor's reasons for exercising the peremptory challenges were racially neutral.

### B.   Failure to Charge Attempted Manslaughter 1st

In Ground Two of his petition, Robinson argues that the trial court erred in failing to charge Attempted Manslaughter in the First Degree as the lesser offense of Attempted Murder in the

Second Degree. See Pet. at 8. On direct appeal, however, the Appellate Division, Fourth Department found that:

> Because attempted manslaughter in the first degree
> (Penal Law §§ 110.00, 125.20[1]) is a nonexistent
> crime, the court properly denied defendant's request to
> charge it as a lesser included offense of attempted
> murder in the second degree (see People v. Martinez, 81
> NY2d 810, 811-12; People v. McDavis, 97 AD2d 302, 303-
> 304).

Robinson, 1 A.D. 3d at 985-6. In addition, Respondent asserts that this claim is not cognizable on federal habeas review as it does not implicate a federal constitutional right. See Respondent's Brief at 26.

The trial court was correct in its denial to charge attempted manslaughter in the first degree as the lesser included offense because this proposed charge is not the lesser included offense for attempted murder in the second degree, nor is it an actual crime under New York Penal Law. See Holmes v. Rick, 378 F.Supp.2d 171, 180 (W.D.N.Y. 2004). A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime. N.Y. Penal Law § 110.00. Attempted manslaughter in the first degree is a nonexistent crime because manslaughter requires no intent, but an attempt to commit a crime requires proof of the intent to commit the crime. See People v. Martinez, 81 N.Y.2d 810, 811-12 (1993) (finding that it was fundamental error to instruct jury on attempted manslaughter in first degree as lesser included charge of

attempted murder in the second degree) (citing <u>People v. Campbell</u>, 72 N.Y.2d 602, 605 (1988). Likewise, "there can be no attempt to commit a crime that does not involve a specific intent, such as manslaughter in the second degree, a crime predicated upon a reckless act." <u>People v. McDavis</u>, 97 A.D.2d 302, 303-04 (1983) (citations omitted). Therefore, the trial court's refusal was proper.

In addition, the Supreme Court has held that due process only requires a trial court to submit jury instructions regarding lesser-included offenses when it is a capital case and the Court has expressly declined to consider whether such a requirement applies in a non-capital context. <u>Beck v. Alabama</u>, 447 U.S. 625, 638 & n. 14 (1980). As "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," <u>Jones v. Hoffman</u>, 86 F.3d 46, 48 (2d Cir. 1996) (per curiam) (emphasis added), the Second Circuit has held that federal habeas courts are precluded from considering the propriety of a state court's charging decisions in this context. <u>Id.</u>; <u>accord</u> <u>Carey v. Musladin</u>, 549 U.S. 70 (2006) ("In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), we explained that 'clearly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision' "). Accordingly, the state court's charging decision was

proper, and furthermore it does not implicate a federal constitutional right for which federal habeas relief may be granted. This claim is dismissed.

### C. Petitioner Claims that the Trial Court's Cumulative Errors Deprived Him of the Right to a Fair Trial

Robinson contends, as he did on direct appeal, that the balance of the trial court's erroneous rulings, when considered cumulatively, deprived him of a fair trial. See Pet. at 8 (Docket No. 1). Specifically, Robinson asserts that the trial court: (1) improperly provided an adverse inference charge; (2) improperly admitted video of the crime scene; (3) erred in admitting a telephone conversation between Tracey Tyson and Sean Gray; (4) improperly limited defense counsel's cross-examination of prosecution's witnesses; (5) erred in denying defense's motion to dismiss the felony murder charge; (6) wrongfully sustained baseless prosecution objections while refusing to sustain valid defense objections; (7) failed to sustain defense's objections to prosecution's improper cross-examination; (8) improperly denied defense's request to charge extreme emotional disturbance; (9) incorrectly refused to charge Attempted Manslaughter in the First Degree; (10) improperly admitted Robinson's medical records without redaction; and (11) improperly charged accomplice liability with respect to the lesser offense of manslaughter. See Appendix, State Court Records, Exhibit B, 24-27 (Petitioner's Appellate Brief). On direct appeal, the Appellate Division, Fourth

-18-

Department rejected all of Robinson's eleven claims as either without merit, not preserved for appellate review, or as proper trial court determinations. <u>Robinson</u>, 1 A.D.3d at 986-7.

The Second Circuit has recognized that the "cumulative error" rule is grounds for federal habeas relief, but to be granted only in limited circumstances. <u>See</u> <u>Sanders v. Sullivan</u>, 701 F.Supp. 1008, 1012 (S.D.N.Y. 1988). In order for a cumulative error claim to be the basis for federal habeas relief, it must be shown that the alleged individual errors are in fact erroneous trial court rulings. <u>Joyce v. Miller</u>, 2002 WL 1023141, at 13 (S.D.N.Y. 2002). In addition, if actual errors are discovered but it cannot be shown that one of those errors requires reversal of the conviction, then the "whole body of error is to be assessed for prejudicial effect." <u>Sanders</u>, 701 F.Supp. at 1013.

"In order for the cumulative effect of errors to warrant a new trial, the claimed errors must be 'so prejudicial that they rendered petitioner's trial [ ] fundamentally unfair.' " <u>Joyner</u>, 2002 WL 1023141, at 13, quoting <u>Collins v. Scully</u>, 878 F.Supp. 452, 460 (E.D.N.Y.1995). However, the Supreme Court has "defined the category of errors that violate 'fundamental fairness' very narrowly." <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990). "A habeas petitioner may not aggregate merely unfavorable rulings or events to show a lack of fundamental fairness." <u>Collins</u>, 878 F.Supp. at 460.

Upon careful review of record, there is no evidence that any of the alleged errors rise to the level of a federal constitutional violation of Robinson's right to a fair trial. First, three of Robinson's claims[3] were specifically rejected on direct appeal based on his failure to object at trial and preserve the issues for appellate review and are now procedurally barred from federal habeas review. Coleman v. Thompson, 501 U.S. 722, 729 (1991)(stating that a federal habeas court will "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). In addition, Robinson has not established the requisite cause and prejudice, or a fundamental miscarriage of justice which would overcome the procedural bar. Grey v. Hoke, 933 F.2d 117, 120-21 (2nd Cir. 1991); See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Accordingly, these three claims are procedurally barred from consideration on federal habeas review.

Moreover, with respect to the merits of Robinson's claims of other alleged errors, the Appellate Division, on appeal, found that the alleged errors were not actually errors at all and were

_____

[3]The three claims are were barred from state appellate review were: (1)that the trial court improperly provided an adverse inference charge without Robinson's request; (2)wrongly denied Robinson's request to dismiss the felony murder charge; and (3) incorrectly charged Robinson with accomplice liability.

-20-

properly found to be without merit.  See Robinson, 1 A.D.3d at 986-87.  In addition, Robinson has made no attempt to provide evidence that any of these alleged errors prejudiced his trial to the required level where it was rendered "fundamentally unfair." See Collins, 878 F.Supp. at 460-61. (rejecting cumulative error claim where petitioner "failed to establish inherent or actual prejudice resulting from any of the alleged errors").  Accordingly, Robinson's cumulative error claim lacks merit and is denied.

### D.    Trial error in denying Robinson's 330.30 motion

In his final claim for habeas relief, Robinson contends that the trial court erroneously denied relief under C.P.L. §330.30(2)[4] based on alleged improper conduct by a juror. Pet. at 8.  This claim stems from Juror Webb's prior knowledge of the layout of the apartment where the murder occurred.  In denying this claim on direct appeal, the Appellate Division, Fourth Department held:

> The court properly denied defendant's motion to set aside the verdict based upon juror misconduct (see CPL 330.30 [2]).  Defendant made the motion after it was revealed that a juror had knowledge of the layout of the apartment where the crime was committed and shared that knowledge with the other jurors.  The juror was familiar with the apartment because he had installed appliances at that

---

[4] C.P.L. § 330.30 provides that "[a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:

2. That during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict; or

N.Y Crim. Proc. L. § 330.30(2).

apartment complex.  At the hearing on the motion, the juror in question testified that, although he believed that a diagram of the apartment that was introduced in evidence was inaccurate his knowledge of the layout of the apartment did not affect his verdict.  In addition, the other jurors who testified at the hearing indicated that they were not influenced by that juror's comments.  Thus, under the facts of this case, defendant was not prejudiced by the juror's comments during deliberation (see generally People v. Mraqh, 94 NY2d 569, 573-574; People v. Brown, 48 NY2d 388, 393).

Robinson, 1 A.D.3d at 985-6.  In addition, Respondent argues that there was no "palpable prejudice" to Robinson and the Appellate Division's affirmance of the trial court's finding was not "contrary to" or an "unreasonable application of" clearly established Federal law. See Respondent's Brief at 40-41.

"[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 339 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."). Robinson has presented no evidence to rebut this presumption and limited his contention solely to his belief that Juror Webb's prior knowledge of the apartment layout contaminated the jury's independent decision-making. Pet. at 8.  The trial court, however, held a post-trial hearing pursuant to Robinson's

motion during which seven of the twelve jurors testified concerning the effect of Juror Webb's knowledge of the apartment had upon their determination.  Following the hearing, the trial court found that the "alleged conduct did not rise to the inherently prejudicial level" because the seven jurors who testified at the hearing stated that Juror Webb's prior knowledge of the apartment layout had no effect on their verdicts. See Appendix, State Court Records, Exhibit C, 92-94.  In light of the testimony at the hearing, the court's finding that Robinson was not prejudiced by Juror Webb's prior knowledge of the apartment layout was not "objectively unreasonable." Miller-El, 537 U.S. at 339. Furthermore, Robinson has not presented any clear and convincing evidence showing that the state court's decision was objectively incorrect.  Accordingly, relief for this claim is denied.

## V. CONCLUSION

For the reasons stated above, Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner Robinson has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

ALL OF THE ABOVE IS SO ORDERED.


                                    s/Michael A. Telesca
                                   MICHAEL A. TELESCA
                                 United States District Judge

DATED:    Rochester, New York
          November 23, 2009